IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALONZO AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:07-cv-042-MEF |
| | ) | [wo] |
| GLOBAL CONNECTION, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1)(B) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 6, filed February 15, 2007). Pending before the Court are *Defendants' Motion for Summary Judgment* (Doc. 57, filed February 1, 2008), *Defendants' Memorandum Brief in Support of their Motion for Summary Judgment* (Doc. 58, filed February 1, 2008), and *Plaintiff [sic] Motion for Summary Judgment* (Doc. 61, filed January 31, 2008). For good cause, it is the Recommendation of the Magistrate Judge to deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

**I. PARTIES**

Plaintiff, Alonzo Austin ("Austin" or "Plaintiff") is a resident of Tuskegee in Macon County, Alabama, within the Middle District of Alabama.

Defendant Global Connection, Inc. of America is incorporated in the state of Georgia with its principle place of business being located in Atlanta, Georgia. Defendant Global Connection, Inc. of Alabama is a subsidiary of Global Connection, Inc. of America and does business in the state of Alabama. Defendant Global Connection, Inc. of America and Global Connection, Inc. of Alabama shall be collectively referred to as "Global Connection Defendants."

Defendant Sam Abdallah ("Abdallah") and Defendant Rachelle Copeland ("Copeland") are corporate officers of the corporate Defendants.

## II.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Global Connection Defendants do not contest personal jurisdiction or venue, and there are adequate allegations to support both. Abdallah and Copeland both challenge personal jurisdiction on the basis Austin cannot pierce the corporate veil.

## III.   NATURE OF CASE

Austin initiated this action on January 12, 2007. *See* Doc. 1, Complaint. Austin filed an Amended Complaint on July 2, 2007 wherein he alleges that on November 11, 2005, he entered into an oral agreement with Defendants to receive phone services including one hundred (100) free long distance minutes if he permitted Defendants to automatically draft his credit card on a monthly basis. *See* Doc. 28, Amended Complaint, at p. 2. Austin states Defendants did not provide the 100 free long distance minutes and he only received the

minutes he paid for at 5.9¢ per minute. *Id.* at p. 3. Austin further alleges Defendants ignored his oral contract termination notice and drafted his credit card on January 6, 2006 after the notice. *Id.* Austin alleges he relied upon false representations made by the Defendants. *Id.* Austin asserts claims for fraud, federal wire fraud, mail fraud, and "racketeering activity" in violation of 18 U.S.C. § 1961, *et seq*. *Id.* at p.4-5. In his original Complaint, Austin alleges actual damages of $166.97 and punitive damages in the amount of $30,000.00 *See* Doc. 1 at ¶ 9, Counts I-III. However, in his Amended Complaint, Austin does not provide a clear amount of actual damages, but does make a general statement that he incorporates by reference all the allegations in paragraphs 1 through 13 in his original complaint.[1] *See* Doc. 28 at p. 5. Austin further requests punitive damages in the amount of $100,000.00. *Id.*

Defendants' Amended Answer was filed on August 17, 2007. *See* Doc. 41, Amended Answer. Defendants deny the allegations of the complaint and further assert Abdallah and Copeland are not proper parties to the action as they have no contractual relationship with the Plaintiff and are simply offers of the corporate defendants. *Id* at § 10.

### IV. PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**A.   Plaintiff's Motion for Summary Judgment**

On January 31, 2008, Austin moved for summary judgment. *See* Doc. 61. In his motion, Austin includes his own Affidavit and a brief in support. *Id.* Austin's Motion for

---

[1]   Local Rule 15.1 requires that the amended complaint must reproduce the entire pleadings as amended and may not incorporate any prior pleading by reference. *See* M.D. Ala. L.R. 15.1. However, because the deadline for amending pleadings has long since passed, the Court will attempt to piecemeal Austin's complaint.

Summary Judgment appears to be another statement of his allegations. In his affidavit, Austin merely restates his allegations and then asserts several statements by the Global Connection Defendants are misrepresentations. *See* Doc. 61 at p. 2-4. He also goes on to state "the Defendant's affidavit is full of outrageous untrues [sic] and misrepresentations." *Id*. at p. 4. In his brief, Austin again restates his allegations and cites to various authority which allegedly supports his entitlement to relief. *Id*. at p. 5-11. He attaches as exhibits a copy of a credit card draft on January 6, 2006 for $46.99 (Exhibit A) and an invoice dated December 20, 2005 (Exhibit C).[2] The invoice has a due date of January 7, 2006.

Defendants filed their response on February 22, 2008 in opposition of Plaintiff's Motion for Summary Judgment. *See* Doc. 66, Brief in Opposition to Plaintiff's Motion for Summary Judgment." Defendants argue that Austin's Motion for Summary Judgment has not made a case sufficient to authorize the grant of summary judgment. *Id*. at p. 4. Moreover, they state Austin's affidavit has contradictions which prohibit resolution of facts in his favor and Austin's discussion on his claims on RICO, mail fraud, and wire fraud is merely cited cases with no legal argument. *Id*.

**B.    Defendants' Motion for Summary Judgment**

Defendants also request summary judgment on several grounds. *See* Doc. 58. Defendants Abdallah and Copeland assert the proper defendants are the Global Connection Defendants, and Austin cannot pierce the corporate veil, ergo, no claims can stand against

---

[2] There is no Exhibit B.

them. *Id.* at p. 3-4. The Global Connection Defendants aver Austin is unable to establish the necessary elements of his causes of action. *Id*. at p. 2.

Specifically, the Global Connection Defendants state Austin cannot show a false representation as to the 100 free long distance minutes. *Id*. at p. 5. Austin received a $10.00 credit on his December 20, 2005 bill which was the credit for the 100 free long distance minutes. *Id*. In addition, Austin agreed to allow his credit card to be charged automatically each month for his telephone services. *See* Doc. 58 at p. 6. The charge in question was related to the December 20, 2005 invoice with a due date of January 7, 2006. *Id*. Austin's January 6, 2006 cancellation was not made in sufficient time to stop the January 7 automatic charge of $46.99, but upon learning of the cancellation of services, the Global Connection Defendants issued a refund check in the amount of $21.99. *Id*. at p. 7. The refund check represented the refund of $46.99 minus the $25.00 processing fee stated in the invoice. *Id*. Further, Defendants were contractually obligated to issue the refund check. *Id*. As a result, Defendants assert Austin cannot maintain a claim for wire fraud or mail fraud. Additionally, Defendants aver that since there is no underlying fraud, Austin cannot support a civil RICO action. *Id.* at 8. Finally, Defendants assert punitive damages in the amount of $100,000.00 cannot be supported because there must be an underlying cause of action and are "wildly out of line with legally recognized limitations of punitive damage awards." *Id*. at 8-9.

To date, Austin has not filed a response to Defendants' Motion for Summary Judgment, thus the Court reviews the Motion for Summary Judgment on its merits without the benefit of a response.

### V.  STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id.* at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* at 249. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence

at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53.  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment.  *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings.  FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted).  Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Id*. at 322, 106 S.Ct. at 2552.

## VI.  DISCUSSION AND ANALYSIS

**A.    Austin's Motion for Summary Judgment**

As noted above, summary judgment is only appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Austin fails to carry his initial burden and establish there is no genuine issue of material fact since Defendants clearly deny Plaintiff's allegations in their Answer as well as through the response to Austin's original motion for summary judgment. *See* Docs. 10 and 41. Defendants explicitly deny Austin's allegations and assert facts that

directly contradict his allegations. Further, in Austin's own affidavit he asserts Defendants make misrepresentations and further states things are "untrue." *See* Doc. 61 at §§ 4, 6-9, 11. As such, Austin's own statements show there is clearly a factual dispute that cannot be resolved by summary judgment in his favor. Consequently, Plaintiff's Motion for Summary Judgment must be denied.

**B.     Defendants' Abdallah and Copeland Motion for Summary Judgment**

Defendant Abdallah is a principal officer of the Defendants. *See* Doc. 10, Exhibit A, Affidavit of Sam Abdallah. Defendant Copeland is an officer of the corporation and is allegedly the secretary of the Defendant corporations. *See* Doc. 63, Exhibit B. Austin does not assert specific claims against Defendants Abdallah and Copeland, hence the Court must conclude he seeks to hold them liable for the actions of the corporate Defendants.

It is a well-established concept that "a corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers." *Nimbus Techs., Inc. v. Sunndata Prods., Inc.*, 484 F.3d 1305, (11th Cir. 2007) (quoting *Cohen v. Williams*, 294 Ala. 417, 318 So.2d 279, 281 (1975)). Under Alabama law, "[p]iercing the corporate veil is not a power that is lightly exercised." *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1334 (Ala. 1991); *see also Perry v. Household Retail Servs., Inc.*, 953 F.Supp. 1378, 1381 (M.D. Ala. 1996) (quoting *Blanton*). At times, a court may disregard the corporate entity and impose liability upon the controlling party. To establish that one party is the alter-ego of another party, or to pierce the corporate veil, a plaintiff must show the following:

    (1)    The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;

    (2)    The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuses of control will be presumed;

    (3)    The misuse of this control must proximately cause the harm or unjust loss complained of.

*Blanton*, 585 So.2d at 1334-35 (quoting *Messick v. Moring*, 514 So.2d 892, 894-95 (Ala. 1987)); *see also Perry*, 953 F.Supp. at 1381 (citing *Blanton* and *Messick*); *Hollingshead v. Burford Equip. Co.*, 828 F.Supp. 916, 919 (M.D. Ala. 1993) (citing *United Steelworkers of America v. Connors Steel*, 855 F.2d 1499, 1506-07 (11th Cir. 1988)). Given the fact-intensive nature of the veil-piercing analysis, the determination is typically one to be resolved at trial, where the trier of fact can make choices as to credibility and weight of the evidence. *See Perry*, 953 F.Supp. at 1381 (citations omitted). However, the court may grant summary judgment if a trial court, under appropriate standards, have but one result. *Id*.

    In the case at hand, Austin made no attempt to establish any of the elements necessary to pierce the corporate veil. Even though Abdallah and Copeland are officers of the Global Connection Defendants, Austin must show domination and control, misuse of control, and

proximate causation of the harm. Even viewing the information in the light most favorable to the nonmovant Austin, there is insufficient information to conclude Abdallah and Copeland have domination and control over the Global Connection Defendants, have misused that control, and the misuse of this control proximately caused the harm Austin alleges. As such, the corporate veil remains intact, and Defendants Abdallah and Copeland cannot be held liable. Thus, they are due dismissal.

C.      **Global Connection Defendants' Motion for Summary Judgment**

The Global Connection Defendants assert Austin cannot establish a material misrepresentation of fact was made. *See* Doc. 58 at p. 2. Since a misrepresentation of fact to the plaintiff is a threshold requirement for all four causes of action, Defendants should receive judgment as a matter of law on all counts. *Id.*

i.      **Count I - Fraud in the Misrepresentation as to 100 free minutes**

Austin alleges fraud by the defendants when they promised 100 free long distance minutes in exchange for Austin permitting an automatic draft of his credit card. *See* Doc. 28 at p. 2; Doc. 61 at p. 3. This underlying action of fraud constitutes the basis for Austin's remaining allegations of wire fraud, mail fraud, and under RICO. Defendants assert Austin received the 100 free minutes as a credit on his December 25, 2005 bill, therefore Austin is unable to establish the necessary elements for fraud.

Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Saia Food Distribs. & Club, Inc. v.*

*SecurityLink from Ameritech, Inc.*, 902 So. 2d 46, 57 (Ala. 2004) (quoting *Waddell & Reed, Inc.*, 875 So. 2d 1143, 1160 (Ala. 2003)).[3] When punitive damages are sought, as is in the case by Austin, fraud is statutorily defined to include intent. Ala. Code. § 6-11-20 (1975); *see also Exxon Mobil Corp. v. Alabama Dep't of Conservation and Natural Res.*, ___ So. 2d ___, 2007 WL 3224585 (Ala. 2007) (citing and quoting statute). Further, "[i]f a fraud claim is based upon a promise to do some act in the future, . . . then the Plaintiff has the added burden of proving the additional elements that: (1) the promisor, at the time of the alleged misrepresentation, did not intend to the do the act promised; and (2) the promisor, at that time, had an intent to deceive." *Allstate Ins. Co. v. Hilley*, 595 So. 2d 873, 875-76 (Ala. 1992) (quoting *General Motors Acceptance Corp., Inc. v. Covington*, 586 So. 2d 178, 181 (Ala. 1991)). Austin's allegation that Defendants would provide him 100 free minutes if he signed up for the automatic drafting program would constitute such a promissory fraud claim. *See, e.g., id.* (quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988)) (A promissory fraud claim is "one based upon a promise to act or not to act in the future.").

Austin's fraud claim arises from the alleged representation by the Global Connection Defendants that should Austin allow them to automatically draft his credit card for his monthly statements he would receive 100 free long distance minutes. In his affidavit, Sam Abdallah states "Defendant extended the free 100 minutes of long distance service to

---

[3] Ordinarily, intent is not an element of a fraud claim. Ala. Code § 6-5-101 ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.").

[Austin] on December 6, 2005 and reduced his bill by $10.00." *See* Doc. 10 at p. 7, ¶ 6. Austin states this is "untrue" and to "see exhibit 'C' (No accounting exist. [sic] to support Defendant's contentions.)." *See* Doc. 61 at p. 3, ¶ 6. However, Exhibit C is a copy of the Global Connection invoice which clearly shows a $10.00 credit on the bill. *See* Doc. 61, Exhibit B. Further, Austin admits he received a $10.00 credit on his December 20, 2005 bill. *See* Doc. 58, Exhibit C, ¶ 14. As such, Austin is unable to establish the requisite elements of fraud and promissory fraud. That is, Austin cannot show the Global Connection Defendants made an intentional false representation of a material existent fact which was reasonably relied upon, nor can Austin show he who suffered damage as a proximate consequence of the misrepresentation. Consequently, Austin's claim for fraud fails as matter of law.

      **ii.**     **Counts II - IV Wire Fraud in Charging Card Without Authority**, **Mail Fraud in Sending a Check**, **and RICO**

Austin asserts a violation of 18 U.S.C. § 1962(a) and (c) known as the Racketeer Influenced and Corrupt Organizations Act (RICO). Subsection (a) makes it unlawful for any "person" who has received income from a pattern of racketeering activity to invest such income into any "enterprise" which is engaged in interstate commerce. *See* 18 U.S.C. § 1962(a). Subsection (c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §

1962(c).  The RICO Act imposes both criminal and civil liability for specified federal offenses dubbed "racketeering activity."  *See* 18 U.S.C. § 1961(1) (racketeering activity is defined as including any act which is indictable under a lengthy list of criminal offenses, including federal statutes prohibiting mail and wire fraud); *see also Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (same).  To recover under the RICO statute, a plaintiff must establish four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Langford*, 231 F.3d at 1311 (citing *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)); *see also Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L.Ed.2d 346 (1985) (same elements and cited by *Durham* court).

Austin alleges mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 as the predicate acts which supports his RICO claim.  *See* Doc. 1 at p. 4-5; Doc. 28 at p. 4-5; Doc. 61 at p. 9.  "A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes: (1) that defendants knowingly devised or participated in a scheme to defraud plaintiff[], (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme."  *Langford*, 231 F.3d at 1312 (citations omitted).  However, firstly, to establish an action under § 1962(a) and (c), Austin must establish a "pattern of racketeering activity."  A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity.  18 U.S.C. § 1961(5).  While Austin may be arguing the act of charging his credit card and the mailing of the check are two separate acts of racketeering

activity, "two isolated acts do not constitute a pattern." *Sedima*, 473 U.S. at 496 n. 14, 105 S. Ct. at 3285; *Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1397 (11th Cir. 1994). Instead, "it is the factor of *continuity plus relationship* which combines to produce a pattern." *Cox*, 17 F.3d at 1397 (citations omitted and emphasis in original). "Predicate acts demonstrate continuity if they are either a 'closed period of repeated conduct' or 'past conduct that by its nature projects into the future with a threat of repetition. *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241, 109 S. Ct. 2893, 2902, 106 L.Ed.2d 195 (1989)). Continuity over a closed period can be demonstrated through a series of related predicates extending over a substantial period of time. *Id*. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id*. Austin's allegations of charging his credit card without permission and mailing a refund check do not rise to the level of a pattern of racketeering activity. In fact, the acts alleged do not indicate more than sporadic or isolated activity. *Cf. Shared Network Techs, Inc. v. Taylor*, 669 F. Supp. 422, 428 (N.D. Ga. 1987) (court found the facts alleged indicated more than sporadic or isolated activity and therefore satisfied the pattern requirement of continuity plus relationship). Thus, the Court must conclude Austin fails to show closed end continuity. Additionally, Austin does not allege there is a threat of future conduct, so he cannot satisfy open end continuity. As a result, Austin does not show a pattern of racketeering activity and his RICO claim fails. The Court need not discuss the remaining requirements to establish a RICO action.

Further, Austin cannot pursue his claims for mail fraud or wire fraud as both statutes relate to criminal proceedings. A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 n. 13, 125 S.Ct. 2796, 2809, 162 L.Ed.2d 658 (2005) (quoting *Linda R. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)); *Leeke v. Timmerman*, 454 U.S. 83, 85-86, 102 S.Ct. 69, 70, 70 L.Ed.2d 65 (1981); *see also Davit v. Davit*, 173 Fed. Appx. 515 (7th Cir. 2006) (unpublished opinion) ("A private individual does not have standing to demand the criminal prosecution of another individual, let alone standing to prosecute the individual [herself]."). Thus, the claims are without legal merit and warrant dismissal.

## VII.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

(1)   *Plaintiff [sic] Motion for Summary Judgment* (Doc. 61) be DENIED;

(2)   Defendants' Motion for Summary Judgment (Doc. 57) be GRANTED;

(3)   This case be dismissed with prejudice.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **March 18, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 5th day of March, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE